**CONTINENTAL CASUALTY COM-PANY et al.**

v.

**AMERICAN SECURITY CORPORA-TION et al.**

Mather Construction Company et al., Appellants,

Mather AFB Housing No. Two, Inc., et al.

No. 23171.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 18, 1970.

Decided Nov. 3, 1970.

As Amended Dec. 10, 1970.

Petition for Rehearing Denied Dec. 7, 1970.

———◆———

Mr. Carl J. Felth, Washington, D. C., with whom Mr. Daniel J. Anderson, Washington, D. C., was on the brief, for appellants. Messrs. Thomas A. Flannery, U. S. Atty., Joseph M. Hannon, John A. Terry and Miss Mary E. Folliard, Asst. U. S. Attys., entered appearances for appellant Philip N. Brownstein, Commissioner, FHA. Mr. Joel C.

Wise, Washington, D. C., also entered an appearance for appellant American Security Corporation.

Mr. Kahl K. Spriggs, Washington, D. C., with whom Mr. John F. Myers, Washington, D. C., was on the brief, for appellees.

Before MacKINNON and WILKEY, Circuit Judges, and CHRISTENSEN,* U. S. District Judge, District of Utah.

PER CURIAM:

Continental Casualty Company and the Fidelity and Casualty Company of New York, appellees, brought this action against the construction contractors, appellants Mather Construction Company, D & L Contruction Company, and J. D. Bradley, Inc., to recover amounts escrowed with the defendant American Security Corporation for unpaid bills for labor and materials and certain unfinished landscape items on the Mather Air Force Base project. Appellees were sureties on the performance and payment bonds given in relation to a contract for the construction of 220 units of military housing under the Capehart Act.[1]

The District Court granted summary judgment against the three appellant contracting companies, and found the appellees were entitled to the sums totalling $147,824.44 escrowed with the defendant American Security Corporation, the stakeholder who has not appealed. We affirm the summary judgment granted by the District Court.

Pursuant to Rule 56 and according to the usual practice, in support of their motion for summary judgment appellees filed a "Statement of Material Facts as to Which There Is No Genuine Issue."[2] This included as exhibits photostats of some thirty-five cancelled checks, representing the satisfaction of claims, of persons performing work as subcontractors or as suppliers furnishing materials, against the appellees as sureties for the three appellant contractors, as well as copies of the relevant contract and indemnity agreements. An affidavit by an Assistant Vice President of the appellee Continental Casualty Company stated that the facts set forth in the affidavit were known personally to the affiant and were reflected in the office records of Continental Casualty Company to which the affiant had access in the course of his official duties, that the "Statement of Material Facts as to Which There Is No Genuine Issue" was true, and that all claims against the appellees as sureties were paid in good faith after investigation and in the belief that appellees were liable therefor. The itemized list of claims paid totalled $409,512.43.

The appellant construction firms did not file any affidavit contradicting the affidavit of the officer of the appellee surety company, nor did the appellants attempt to contradict under oath any single claim of payment, asserted under oath as having been made by the appellee surety companies. Appellants did file one affidavit, by D. L. Bradley, which dealt in general terms with the project and recited facts which were not in dispute by either party and therefore not material to any issue in the lawsuit, e. g., that Mather AFB Housing No. Two, Inc., and Mather AFB Housing No. Three, Inc., projects were completed (with certain exceptions) and turned over to the Air Force. The important issue in the lawsuit was not about the substantial completion of the projects, but concerned unpaid materialmen and subcontractor bills left to be cleaned up by the surety companies and escrowed

---

* Sitting by designation pursuant to 28 U. S.C. § 292(c).

1. 42 U.S.C. §§ 1594–1594f; 12 U.S.C. §§ 1748–1748g. For a description of the manner in which the Capehart Act scheme operates to accomplish its purpose of providing housing for military personnel without the use of appropriated funds, see Miller v. United States, 161 Ct.Cl. 455, 457 (1963).

2. See Rule 9(h) of the Rules of the U. S. District Court for the District of Columbia.

funds of undisbursed mortgage proceeds [3] which now are sought partially to reimburse the sureties.

Since the appellants had not put in issue by affidavits of their own a single material fact relied upon by the appellees in their motion for summary judgment, appellants' counsel stated at oral argument that the issue on appeal was the sufficiency of the appellees' affidavit to support the summary judgment granted by the District Court.

We find that the affidavit and the supporting documents were sufficient and formed a firm foundation for the action taken by the District Judge. This type of lawsuit, involving as it does numerous financial items, most of which are not in dispute and are susceptible of simple accounting treatment, is ideally suited for determination on summary judgment after appropriate interrogatories and other discovery processes have established that there is no genuine dispute as to any material fact.[4]

The affidavit here was by an officer of one of the appellee companies, charged with the responsibility for the processing of claims, who made affidavit on his own personal knowledge and on the records of his surety company with which his duties required him to be familiar.[5] All of these records would have been admissible at trial under the Federal Shop Book Rule,[6] and indeed their accuracy was in no way challenged by the appellants' cross-affidavit.[7] On the record before him the District Judge properly granted summary judgment.[8]

In oral argument appellants attempted to raise a question as to whether each and every dollar paid out by the surety companies was for a claim specifically related to one of the housing projects on Mather Air Force Base, and that the total claims paid on each of the projects was equal to or in excess of the amount in each escrow fund. In the posture of this case, appeal from a summary judgment, it suffices to point out that in sup-

---

3. Under the Capehart Act system the construction costs, including the builder's profit, are derived entirely from such mortgage proceeds. In the instant case, a portion of these funds were escrowed under three separate agreements to cover certain unpaid construction and landscaping costs. The appellee sureties, by virtue of their payment of claims against the bonds, claim to be subrogated to, and also, under the terms of their indemnity and assignment agreements, entitled to, whatever interest appellant contracting companies have in the escrowed funds.

4. *See* Atlantic States Construction Co. v. Robert E. Lee & Co., Inc. of South Carolina, 406 F.2d 827, 829 (4th Cir. 1969); C. Wright, Federal Courts § 99 at 442 (1970).

5. Woods v. Allied Concord Financial Corp., 373 F.2d 733, 734 (5th Cir. 1967). *See* Royal Indemnity Co. v. United States, 371 F.2d 462, 178 Ct.Cl. 46 (1967).

6. 28 U.S.C. § 1732.

7. As we found to be the case in Thompson v. Evening Star Newspaper Co., 129 U.S. App.D.C. 299, 302, 394 F.2d 774, 777 (1968) appellants "in effect, relied on [their] pleadings to create an issue of fact. That course is impermissible under F.R.Civ.P. 56(e)." Indeed, in the face

of Rule 56(e)'s explicit direction that a party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial," appellants' reply brief contains the following "comment" in summary of its argument that summary judgment was erroneously granted:

> Appellants submit that the sheer volume of the pleadings and the controversial matters in dispute involving a substantial sum of funds, escrowed by the appellants, prove conclusively that there are genuine issues of material fact to be resolved in a full trial before a jury on the merits.

Such a position is so plainly at odds with the requirements of rule 56 as to require no further comment.

8. Chapman v. Rudd Paint & Varnish Co., 409 F.2d 635, 643 (9th Cir. 1969); Atlantic States Construction Co. v. Robert E. Lee & Co. Inc. of South Carolina, 406 F.2d 827, 828–829 (4th Cir. 1969); McGuire v. Columbia Broadcasting System, 399 F.2d 902, 905 (9th Cir. 1968); Fox v. Johnson & Wimsatt, Inc., 75 U.S.App. D.C. 211, 218–219, 127 F.2d 729, 736 (1942).

port of their motion for summary judgment appellees' "Statement of Material Facts as to Which There Is No Genuine Issue," whose contents were sworn to by an officer of one of the appellee companies, contained this language:

Plaintiffs paid out, through the drafts above mentioned, to subcontractors and suppliers claiming and demanding unpaid amounts for work done and materials furnished in the prosecution of the aforesaid housing construction work on the Mather AFB Housing No. Two mortgage area and on the Mather AFB Housing No. Three mortgage area *sums in excess of all amounts escrowed on each of such areas* with defendant American Security Corporation. (Emphasis added.)

This affirmation was not contradicted by appellants before the District Court.

Nor on the record before us do we see how it could have been contradicted. On 16 March 1960 William E. Fitzpatrick certified on behalf of appellants D & L Construction Company and J. D. Bradley, Inc., in relation to Mather AFB Housing No. Three, Inc., that there were outstanding liens totalling $97,728.44. On that same date there was in the Special Escrow Account for this project, dated 16 March 1960, the sum of $144,007.95 which was reduced by the time the suit was filed and at the time summary judgment was granted to $72,317.00. There was also in a second escrow fund, for incomplete work on the same Mather AFB Housing No. Three, Inc., the sum of $28,498.00. There was in a third escrow fund, for incomplete work on Mather AFB Housing No. Two Inc., the sum of $21,598.00. The sureties asserted that they had paid off each and every one of the claims outstanding and certified by the representative of two of the appellants, plus other claims

on Mather AFB Housing No. Three, Inc., plus claims on Mather AFB Housing No. Two, Inc., all totalling $409,512.43. Such claims were sworn to have been "paid in good faith after investigation and in the belief that plaintiffs were liable therefor, copies of the drafts for such payments being annexed." Appellees asserted under oath, and it appears highly likely, even if not absolutely certain, from the bare outline of facts we have given in this opinion, that the appellees did pay claims totalling in excess of all amounts escrowed on each of such areas, not only a grand total greatly in excess of the totalled escrowed amounts.

The appellants, as the contractors responsible for these projects, received the benefits of the payments made by the sureties. Under the established law of subrogation, appellees would be entitled to claim through appellants whatever rights the appellants had to these escrowed funds.[9] Appellants could not assert a right to these funds superior to that of the surety appellees, on the uncontradicted facts here. Furthermore under the indemnity agreement and the assignments executed in regard to each project, the rights of the appellants in each and all of these escrow funds, whether derived from the same or a different project, were assigned to the appellee surety companies to the full amount of any and all sums paid by the sureties in settlement of any claims arising under the bonds, if such claims were paid "in good faith under the belief that they or any of them were liable therefor, whether liable or not."[10] Moreover, as the appellees submitted in support of their summary judgment motion, according to the provisions of the indemnity agreement, "an itemized statement thereof, sworn to by an officer of the sureties, or the voucher or

9. Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); Morgenthau v. Fidelity & Deposit Co. of Maryland, 68 App.D.C. 163, 94 F.2d 632 (1937); Lyttle v. National Surety Co., 43 App.D.C. 136 (1915); Fidelity & Deposit Co. of Maryland v. United States, 393 F.2d 834, 183 Ct.Cl.

908 (1968); Home Indemnity Co. v. United States, 376 F.2d 890, 180 Ct.Cl. 173 (1967); United Pacific Insurance Co. v. United States, 362 F.2d 805, 176 Ct.Cl. 176 (1966).

10. A similar provision in an indemnity agreement has been upheld by the Supreme Court. Martin v. National Surety

vouchers, or other evidence of such payment \* \* \* shall be prima facie evidence of the fact and extent of the liability of the applicants in any claim or suit hereunder and in any and all matters arising between the applicants and the sureties." [11]

Whether the theory of the sureties be reimbursement by subrogation or by the specific assignments in the indemnity agreements,[12] the appellees were entitled to the escrow funds held by American Security Corporation, and we cannot conceive of any theory by which on a trial on the merits appellants could possibly prevail.

The summary judgment of the District Court is hereby affirmed. An order of this court of 15 January 1970 enjoined the release of the escrow funds. Appellees have moved to vacate such order. Consistent with this opinion, such order is hereby vacated.

Affirmed.

Co., 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937). *See also* Royal Indemnity Co. v. United States, 93 F.Supp. 891, 117 Ct.Cl. 736 (1950).

11. The validity of a virtually identical provision was approved by this court in Carroll v. National Surety Co., 58 App.

D.C. 3, 24 F.2d 268 (1928). *See also* Royal Indemnity Co. v. United States, 371 F.2d 462, 178 Ct.Cl. 46 (1967).

12. *Compare* the majority and concurring opinions in Pearlman v. Reliance Insurance Co., 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962).